DETERMINED IN THE

# FIFTH DEPARTMENT,

AT

# GENERAL TERM,

### March, 1888.

---

## THE PEOPLE OF THE STATE OF NEW YORK EX REL. THE WEST SIDE STREET RAILWAY COMPANY, APPELLANTS, v. JOSEPH E. BARNARD, AS COMPTROLLER OF THE CITY OF BUFFALO, RESPONDENT.

*Construction of street surface railways in cities — a corporation organized under chapter 252 of 1884, as amended by chapter 642 of 1886 derives all its powers from the State — it cannot construct or operate a railroad beyond the limits of its route as described in its articles of association — the common council cannot compel an interchange of traffic with other companies — the insertions in the notice of sale of conditions and provisions not required by the act vitiates the sale — the comptroller cannot insert any condition or agreement in the bond except such as is prescribed by section 1 of the act.*

A corporation organized under and in pursuance of chapter 252 of 1884, as amended by chapter 642 of 1886, providing for the construction and operation of street surface railroads in cities, towns and villages, derives all its powers from the State, and none of its rights, privileges or franchises are conferred by by the municipal government of the village or city wherein it may carry on its operations.

A corporation cannot be created and be authorized to construct a street railway without executing and filing articles of association with the secretary of state, in which must be stated "the names or descriptions of the streets, avenues and highways in which the road is to be constructed, the places from and to which the road is to be constructed, maintained and operated, the length of said road, or as near as may be;" and no corporation organized in pursuance of this act

HUN—VOL. XLVIII     8

## 58 PEOPLE ex rel. WEST SIDE RY. CO. v. BARNARD.

FIFTH DEPARTMENT, MARCH TERM, 1888.

possesses the power to construct and operate and own a street railroad beyond or outside of the limits of its route, as described in its articles of association, except as it may extend its original line in conformity to other provisions of the enabling act.

The starting point mentioned in the consent granted by the common council of the city of Buffalo in this case was fixed at the intersection of Virginia and Park streets, so as to connect with the tracks of the Buffalo East Side Railroad Company, in Virginia street, the line of the latter company running south, about one and a-half miles to the intersection of Seneca, with Main street. The resolution of the common council granting the application for the construction and operation of a street railroad, in and along the streets named, made it one of the conditions of giving its consent that the company should carry passengers from Seneca street, to and over its own line, for a single fare of five cents for one continuous passage; and in the notice of sale of the franchise it was stated that the purchaser at such sale should take the franchise only upon the condition that it would not charge any greater sum than five cents for one continuous passage from Seneca street along Main street and over the route embraced in the franchise to be sold.

*Held,* that the common council exceeded its authority in making it a condition to giving its consent for the construction of the proposed road, that the corporation seeking the privilege should carry passengers for any distance by any established route, or by any other conveyance, beyond the line mentioned in its articles of association.

That the general act conferred no power upon a corporation, organized under its provisions, to engage in the carrying of passengers beyond the line mentioned in its articles of association, nor is it under any obligation to the public to receive and carry passengers on its own cars on a fare paid to and received by any other company, nor is any existing street railroad company, or any company which may be organized under the act in question, required to receive and carry a passenger for any distance on its line on a fare collected by any other company purchasing such a franchise.

That any attempt on the part of the common council to secure an interchange of trafic was in excess of the powers conferred upon that body.

The route marked out by the common council, in its resolution granting the right to construct the road, was upon and along a portion of the tracks of the East Side Street Railroad Company, as it was located in Allen street, from Park street to Vermont Place, the exact distance not being stated.

*Held,* that it would be a trespass upon the rights of the latter corporation for the relator, or any other company, to run its cars upon the tracks of that corporation, as the provision of the fourteenth section of the act, regulating the right to cross and run parallel with tracks on the same street, does not give the right to one railroad company to run upon the tracks of another except for the purpose of crossing the same.

That, as the legitimate effect of the insertion of these unauthorized provisions in the resolution and notice of sale, would be to prevent other bidders from competing with the relator, who was the highest bidder at the sale held under the said resolu-

PEOPLE ex rel. WEST SIDE RY. CO. v. BARNARD. 59

Fifth Department, March Term, 1888.

tion, the court would not hold that it had secured, by virtue of its bid, the unquestioned right to have and hold the franchise and to build or construct a street railroad on the route designated.

It was deemed by the respondent, the comptroller of the city of Buffalo, that the statute delegated to him, in his official capacity, a discretionary power, and that he had a right, in the exercise of his judgment, to insert in the bond or undertaking in writing (which the purchaser of the franchise was required by sections 1 and 3 of the act to give " in such form, condition, amount and securities ' as should be required by the comptroller), such conditions as he might deem necessary for the purpose of securing a faithful performance and observance of all the purchaser's obligations, imposed upon it by the statute, so that in case of a breach of any of the conditions inserted in the bond, the city and the public might secure complete indemnity by action on the undertaking.

*Held*, that the comptroller was not authorized to demand or receive a bond for any other purpose than the one required by section 1 of the act, and for the object and purposes therein stated.

The bond prepared by the comptroller contained conditions requring the purchaser to carry passengers as provided in the resolution of the common council; forbidding the company to lease or sub-let in any manner said line or any part thereof, except pursuant to the express provisions of law authorizing the same, and providing that any such leasing shall be subject to all the obligations of the bond; requiring it to keep an accurate account of its business and earnings, and that such accounts should at all reasonable times be open to inspection to the mayor or comptroller of said city, or to the common council, or to any persons appointed by them, and also other provisions, one of which provided that the purchaser should pay to the city $10,000 as liquidated damages for the non-performance of its duty and obligation to the public, to commence and complete the road within the time fixed by the statute.

*Held*, the purchaser was justified in refusing to execute the bond

After refusing to execute the bond prepared by the comptroller, the purchaser prepared a bond containing the provisions and conditions required by the act, and other provisions and conditions which were not mentioned therein or required thereby.

*Held*, that the court would not grant a *mandamus* compelling the comptroller to approve and accept the undertaking.

Appeal from an order of the Erie Special Term, denying the relator's application for a peremptory *mandamus* requiring the respondent, as comptroller of the city of Buffalo, to approve a bond executed by the relator, with two sureties, and tendered to the city comptroller as a compliance on its part with the provisions of section 1 of chapter 642 of the Laws of 1886.

*Frank Brundage*, for the relator.

*W. F. Worthington*, for the respondent.

**60** PEOPLE ex rel. WEST SIDE RY. CO. *v.* BARNARD.

Fifth Department, March Term, 1888.

Barker, P. J.:

The relator seeks by *mandamus* to compel the respondent, as comptroller of the city of Buffalo, to approve of a bond executed by it, with two sureties, and tendered to him as being in full compliance with the statute requiring the same and thus complete a purchase by the relator of the franchise to build, construct and operate a street railroad in the city of Buffalo, on the route hereafter mentioned, under and in pursuance of chapter 252 of the Laws of 1884, and the act supplemental thereto, being chapter 642 of the Laws of 1886. The franchise was by the comptroller offered for sale at public auction on the 16th day of August, 1887, to the bidder who would agree to give the largest percentage per annum of the gross receipts of the corporation authorized to construct and operate the road, The relator was the highest bidder at such sale and offered to pay thirty-six per cent of its gross receipts for the franchise, and the same was, by the comptroller, struck off to that company. The respondent in his official capacity prepared a bond, which is, as he claims, in compliance with the statute requiring the company securing the franchise to give adequate security for the fulfillment of its agreement to pay the stipulated percentage of its gross receipts to the city; and also for the commencement and completion of the road according to the plan or plans, and on the route or routes fixed for its construction, within the time designated and prescribed by the provisions of the act, and tendered the same to the relator for execution, which it refused to do for the reason that some of its terms and conditions were illegal and unauthorized. Thereupon the relator prepared and executed a bond with two sureties, and on the twenty-fifth day of August tendered the same to the comptroller and demanded the approval thereof, in the form and manner required by the statute. This instrument the comptroller rejected as not being in its terms and conditions a compliance with the statute. Two days later the comptroller made and signed a memorandum in writing, in which he stated that the relator had refused to execute the bond by him prepared, and for that reason declared the bid canceled, and filed the same in the comptroller's office and readvertised the franchise for sale on the 26th day of September, 1887.

The merits of the controversy present very serious and important questions, and among them the following: (1.) Did the bond

PEOPLE ex rel. WEST SIDE RY. CO. v. BARNARD.    61

Fifth Department, March Term, 1888.

prepared by the comptroller contain any unauthorized terms or conditions? (2.) Did the bond presented by the relator contain all the terms, promises and conditions required by law, and if so, is it exempt from all reasonable objections in other respects? (3.) If it should appear that the bond executed by the relator was in compliance with the requirements of the statute, were the proceedings of the common council in all respects regular, so as to secure the relator, by virtue of the bid, the unquestioned right to have and hold the franchise, and to build, construct and operate a street railroad on the route designated.

The relator, as well as all other corporations organized under the general enabling act of 1884, and the supplemental acts, derive all their powers from the State, and none of their rights, privileges or franchises are conferred by the municipal government of the village or city where it may carry on its operations. A corporation may be lawfully created on complying with the terms of the enabling acts, without asking or receiving consent or permission from the local authorities. A corporation cannot be created and authorized to construct a street railway without executing and filing articles of association with the secretary of State in which must be stated: " The names or descriptions of the streets, avenues and highways in which the road is to be located, the places from and to which the road is to be constructed, maintained and operated, the length of said road, or as near as may be, the amount of capital stock of the company, which shall not be less than ten thousand dollars for every mile of road constructed." No company organized in pursuance of this act possessed the power to construct and operate and own a street railroad beyond or outside of the limits of its route as described in its articles of association, except as it may extend its original line in conformity to other provisions of the enabling act. These several propositions are so clear as not to require any argument in their support. It is but stating an elementary proposition relative to the powers possessed by corporations and the restraints imposed upon them by law in the exercise of their corporate authority.

The act does provide, however, that a corporation organized under its provisions cannot construct a street railroad on its proposed route without first obtaining the consent of the common council of the city, and offering to pay some portion of its gross receipts, which

62    PEOPLE ex rel. WEST SIDE RY. CO. v. BARNARD.

Fifth Department, March Term, 1888.

must be the largest portion of the same offered by any bidder, and also giving the bond required by statute. But these provisions do not in any proper sense relate to the powers possessed by the corporation, nor support the argument that the corporation derives any of its functions from the municipality. They are mere consents on the part of the local government, to be secured by the corporation before it can construct the proposed railroad in the public streets of the city. In this connection it will be assumed, as the fact does not appear by the record, that the line of the relator's road, as described in its articles, is in and along the same streets and to and from the same points, as those mentioned in the notice of sale and referred to in the bonds prepared by the respective parties. The starting point mentioned in the consent granted by the common council and stated in all the subsequent proceedings, is at the intersection of Virginia and Park streets, so as to connect with the tracks of the Buffalo East Side Railroad Company in Virginia street, and the line from that point is in a northerly and westerly direction along several other streets to Forrest avenue, its northern terminus. The length of the road is not mentioned in any of the papers. The intersection of Seneca street with Main street is south of the place of beginning of the relators road, as above stated, and about one and one-half miles therefrom. The line of the East Side Street Railroad Company is and was in operation at the time the sale took place between the points last mentioned. The resolution of the common council granting the application for the construction and operation of a street railroad in and along the streets named, passed June 7, 1887, made it one of the conditions of giving its consent, that the company should carry passengers from Seneca street to and over its own line for a single fare of five cents for one continuous passage. In the notice of sale of the franchise, it was stated that the purchaser at such sale should take the francise only upon the condition that it would not charge any greater sum than five cents for one continuous passage from Seneca street along Main street and over the route embraced in the franchise to be sold. The bond prepared by the relator contained the following condition, viz.:
"Fourth. That said company shall, within the time within which it is required by law to complete its road, be prepared to and thereafter continue to furnish suitable and sufficient street car facilities

PEOPLE ex rel. WEST SIDE RY. CO. *v.* BARNARD. 63

Fifth Department, March Term, 1888.

and accommodations to transport between Seneca street, at or near its junction with Main street, and any other point on the said company's line, between Virginia street and Forrest street and at all reasonable hours, and at such intervals as the accommodation of the public may require, all persons desiring transportation to any such point from any point as far southerly as Seneca street, on the line that it shall establish and furnish for such purpose between the junction of Park street and Virginia street and Seneca street; and it is hereby made a condition of this bond that said company shall establish or furnish a line or otherwise provide facilities for the purpose of transporting passengers to and from Seneca street and it shall always transport all persons desiring such transportation from any point on its line between Forest avenue and Virginia street to any point on the said line to be established, furnished or provided between Virginia and Seneca streets, and said company shall not charge for such transportation for one continuous passage either way, a greater fare than five cents."

The common council exceeded its authority in making it a condition to giving its consent for the construction of the proposed road, that the corporation seeking the privilege should carry passengers for any distance, by any established route, or by any other conveyance beyond the line mentioned in its articles of association. The provision of the bond relative to the carrying of passengers between Seneca street and the place of beginning of the proposed line at the junction of Virginia and Park streets was wholly unauthorized and its insertion therein as a condition to be performed by the relator constituted a good and sufficient reason for its refusal to execute the bond. The general act confers no power upon a corporation organized under its provisions, to engage in the carrying of passengers beyond the line mentioned in its articles of association, nor is it under any obligation to the public to receive and carry passengers on its own cars on a fare paid to and received by any other company, nor is any existing street railroad company or any which may be organzied under the act in question required to receive and carry a passenger for any distance on its line on a fare collected by the relator, if it should succeed in securing the franchise in question.

The provisions of the fifteenth section permitting all surface street

railroad companies to lease and transfer their rights and privileges to another company, or which gives to another company the right to use a portion of its tracks, have no relevancy to the question, as such matters are subjects for the private arrangement of the companies interested, over which the common council have no control, and any attempt on its part to secure an interchange traffic is in excess of its jurisdiction.

The third condition inserted in the bond was also unauthorized, which is as follows: "That the said company shall not at any time lease or sublet in any manner said line or any part thereof, except pursuant to the express provisions of law authorizing the same, and any such leasing shall be subject to all the obligations of this bond." If the relator acquires the franchise in question and constructs the road as therein provided, it possesses the power conferred upon it by the statute to lease the same to another street railroad company, on observing the conditions imposed by the statute which declares the effect of such leasing as well as the obligations which are assumed by the lessee. But such matters have no proper place in the bond, and the comptroller's demand that the relator should give security against an unauthorized transfer of its charter privileges, was officious. It does not in any manner meet the objection interposed for the relator, for the respondent now to say that the provision is a harmless one. The presence of such a provision in the instrument might have the effect to embarrass the relator in procuring the necessary and proper sureties. We need not now inquire whether an action could be maintained for a breach of such a condition, in a bond otherwise in compliance with the statute.

The fifth condition, viz.: "That the said company shall at all times keep an accurate account of its business and earnings, showing the actual number of passengers transported over its line, and all the moneys or equivalent of money that shall be realized, collected or received upon its said line from the sale of tickets or otherwise, or upon the cars which it shall furnish or provide as hereby required, to carry passengers to and from points between Forest avenue and Virginia street, and points as far southerly as Seneca street, as well as all the other receipts of said company from new and extended lines or any source whatever, and that such accounts shall at all reasonable times be open to inspection to the mayor or comptroller

of said city, or to any persons appointed by them or either of them and to the common council of said city, or any person or committee appointed by it."

To a part of these provisions there exist a good objection. It is provided by the general act (sec. 8), and the amendatory act (sec. 1), that the corporation which may build and operate the railroad, shall at all times keep accurate books of account of the business and earnings of such railroad, and that the same shall at all times be subject to the inspection of the local authorities of the city or village, and that the president and treasurer of the company shall make an annual report of the gross amount of its receipts for the year ending September thirty ; and for a failure to comply with such provisions, the corporate rights, privileges and franchises shall be forfeited to the people of the State of New York, and upon judgment to that effect being rendered, by a suit brought in the name of the people, by the attorney-general, the corporation shall be dissolved. We are unable to find any provision in the statute, requiring the purchaser of the franchise to give an undertaking with sureties, that this provision of the statute shall be observed and kept. For a violation of these provisions the corporation may forfeit its franchises and privileges, and be liable for damages in an action at law to a party injured by their non-observance. The objection to the clause relative to carrying passengers as far south as Senaca street is unanswerable, for the relator, under its charter, is not authorized to transport passengers to Seneca street and should not now be required to enter into an undertaking, that it will render an account of a business which it cannot legitimately transact. By the offer made by the relator at the public sale, it became obligated to pay thirty-six per cent per annum of its gross earnings to the city, and to give adequate security for the fulfillment of such obligation. On the argument there was much discussion as to the true construction that should be placed on this provision of the contract, and there is a wide difference in the views of the counsel for the respective parties, as to the portion of the revenues and income of the company, which should be regarded as receipts of money by the company, on which the per centum is to be computed. We are not called upon at this time to decide that question. It may properly be deferred until it arises in a more practical

form, as a bond containing a promise clearly and plainly expressed, that the company will pay over the rate per cent offered and bid upon its gross receipts, is all that the comptroller can fairly exact from the relator.

Without quoting here from the provisions found in the sixth clause of the bond, which relates to this subject, we think they are subject to the objection that the construction which should be placed upon the same is doubtful, and their meaning is not clear and certain, and when read in connection with the other provisions of the bond, they are open to the criticism of being obscure and uncertain in their meaning, when there is not the least necessity for either. The requirements of the statutes as to the security to be given may be readily expressed in language so clear and certain as not to need interpretation.

There is inserted in the seventh clause of the instrument a provision that the relator shall pay to the city $10,000, as liquidated damages for the non-performance of its duty and obligation to the public, to commence and complete the road within the time fixed by the statute, which, in our opinion condemns the whole instrument. The attempt to secure from the relator a stipulation to pay a fixed sum as liquidated damages, and in effect making it a condition to securing the franchise which it purchased at the sale, is without any foundation, for reasons which are obvious. In terms, the sum mentioned as liquidated damages, would be applicable to a breach of the conditions of the fourth clause, which has already been noticed and condemned as unauthorized.

As the relator was fully justified in refusing to execute the bond tendered by the comptroller, we may now examine the one proposed by it and determine whether its provisions answer the requirements of the statute. It is contended by the respondent that the statute delegated to him, in his official capacity, a discretionary power, and that he has the right in the exercise of his judgment to insert such conditions as he may deem necessary for the purpose of securing a faithful performance and observance of all the relator's obligations, imposed upon it by the statute, so that in case of a breach of any of the conditions inserted in the bond, the city and the public may secure complete indemnity by action on the undertaking. In our opinion proper construction of the statute does not give him a discretion as

PEOPLE ex rel. WEST SIDE RY. CO. v. BARNARD.   67

Fifth Department, March Term, 1888.

broad as that for which he contends. The statute has lined out the condition to be inserted in the bond which the purchaser of the franchise is required to give and is expressed as follows: "The right, franchise and privilege of using the said street, * * * shall be sold at public auction to the bidder who will agree to give the largest percentage per annum of the gross receipts of said company or corporation, with adequate security as hereinafter provided, for the fulfillment of said agreement, and for the commencement and completion of such road according to the plan or plans, and on the route or routes fixed for its construction, within the time designated." The duties imposed upon and the power given to the comptroller in preparing the bond, is contained in section 3 of chapter 642, Laws of 1886, viz.: "The security required by section 1 of this act, shall be a bond or undertaking in writing and under seal, in such form, condition, amount and securities as shall be required and approved by the comptroller or other chief fiscal officer of any such city, or by the trustees of any such village." Here is a direct reference to the requirements of the first section of the act, and the comptroller is not authorized to demand or receive a bond for any other purpose than the one required by that section, and for the object and purposes therein stated. The relator was not required to give security for the performance of its many other duties and obligations imposed by the statute. The bond tendered by the relator embraces all the conditions which the comptroller can rightfully demand, and they are fully and plainly expressed in the first, sixth and seventh clauses of that instrument. If the comptroller may exact other conditions than those especially mentioned in the statute, then he has it in his power, by unfair and onerous exactions as to the form and conditions of the bond, to defeat the will of the common council, and deprive the purchaser of the franchise of his just rights and privileges.

If the relator's bond contained no other provisions or conditions than those contained in the clauses to which we have referred, it might be held to be the duty of the comptroller to accept the same, as no specific objection was raised as to the responsibility of the bondsmen. But this instrument contains many other conditions which have no proper place in this instrument, and I think they are of such import as to justify the comptroller's action in refusing to

accept and approve of the same. The fourth clause relates to the same subject-matter as the fourth clause in the comptroller's bond with perhaps a slightly different meaning, and is objectionable for the same reasons. It is an attempt to stipulate, arrange and regulate the duties and obligations of the relator in carrying passengers through and along streets and by routes which it has no power or authority to operate. It affords the relator no excuse for inserting these provisions in the bond, because the comptroller had inserted similar conditions in the instrument which he had prepared for it to execute. The comptroller was justified in refusing to accept any undertaking which contained promises, stipulations or conditions not required by the statute. It was a wise and proper position for him to assume. It was beyond his province to pass upon and determine the effect which such unauthorized conditions might have upon the rights of the city or the public generally, or whether they would render invalid the proper and lawful conditions inserted in the undertaking.

Whether any of these conditions which we regard as unauthorized by the statute, could be enforced against the relator or his sureties, if they should be broken, presents a serious question which we are not prepared to answer either way. In some instances they constitute covenants to keep and observe all ordinances, rules and regulations which may be hereafter enacted by the common council of the city, regulating the rate of speed, mode of use of tracks and removal of ice and snow, when the general act has fixed and imposed a specific penalty of $500 for each and every violation of an ordinance passed by the common council, relative to the same matter. The insertion of these provisions furnishes the court with ample reason for declining to grant the *mandamus* compelling the comptroller to approve and accept the undertaking.

We think other reasons exist for withholding the writ, and they are based upon the illegal and unauthorized action of the common council in imposing certain conditions to be kept and observed by the purchaser of the franchise; which concern the public at large. The route marked out by the common council, in its resolution granting the right to construct the road, is upon and along a portion of the tracks of the East Side Street Railroad Company, as it is located in Allen street, from Park street to Vermont place, the exact distance

not being stated.   It would be a trespass upon the rights of that corporation for the relator or any other company to run its cars upon the tracks of that corporation without its consent.   The provisions of the fourteenth section of the act, regulating the right to cross and run parallel with tracks on the same street, does not give the right to one railroad company to run upon the tracks of another except for the purpose of crossing the same.   It was the purpose of the common council to establish a continuous route over the line marked out in its resolution, and to require the purchaser of the franchise to operate the same, and as a compliance with that requirement could not be kept without the consent of another corporation, it may have prevented other bidders from competing with the relator to the detriment of the city.

The resolution also contained a provision that passengers should be carried by the company receiving the grant from Seneca street through the said route to Forest avenue, for a single fare of five cents for one continuous passage.   We have already considered this condition of the grant and regarded it illegal, for the reason that it imposes upon the purchaser of a franchise, a duty and obligation which could not be legitimately observed by a company organized to build a road on the direct line mentioned in the resolution.   We think the legitimate effect of this unauthorized provision would be to prevent competition at the sale.   The legislature has expressly reserved to itself the right to regulate and reduce the rate of fare on all railroads organized under the provisions of the general act, and the city authorities have no power, whatever, to interfere with the same.   (Sec. 1, chap. 642, Laws of 1886 ; *People ex rel. Lunney* v. *Campbell*, 72 N. Y., 496.)

As the relator's right to the franchise is not clearly established, for the reasons indicated, the writ was properly denied, and the order of the Special Term should be affirmed, with costs.

All concur ; HAIGHT, J., not sitting.

Order affirmed with ten dollars costs and disbursements.